Mr. Burke. Your Honors, good morning. Christopher Burke for the United States, the appellant in this case. And Your Honors, if I could, I'd ask to reserve three minutes of my time for rebuttal. That request will be granted. Your Honors, today the government asks the court to do what it rarely asks the court to do, which is to reverse a district court sentence as being unreasonable, both procedurally and substantively, with respect to this case, the United States v. Malcolm Howe. But Your Honors, this is an unusual case. It's a case where a defendant was charged with a particularly serious kind of fraud, defrauding the United States Air Force of over $150,000 of sensitive military encryption device technology, and then over a two-year period of time, covering up that fraud by lying and providing false documents to many, many different people, including members of the Air Force. Where was the procedural flaw? What was the procedural failing here? Your Honors, we raised a few, but I think the one I would focus the court on most, because I think it is the clearest procedural flaw, is that the government both raised a number of 3553A factors, including seriousness of the offense and the need for general deterrence. And the district court, in an ultimately imposing sentence, an incredibly lenient sentence in this case, did not address the issue of general deterrence at all. And to the extent it touched on the issue of the seriousness of the crime, it said this was, quote, an extraordinarily serious crime. But then through the remainder of its discussion as to why it ultimately varied down to a sentence of probation here, the court simply focused on the history and characteristics of the defendant. Well, are you driving us toward a script, Mr. Burke, which we've said in the past we don't like the way the district court judge ultimately weighed things, obviously, but it's clear he looked at the seriousness of the offense, right? He did look at that, at least, Your Honor, in the sense that he recognized it was very serious. But, Your Honor, I think your point about is there a script for sentencing, clearly there's not. And clearly this court has said that in a general case the courts don't have to list all the 3553A factors. But the point being, Your Honor, in this case the courts also said reasonableness is a range, not a point. But there is a bottom. But that's a substantive point, right? I guess that's what I'm trying to get at. I've searched your submissions to try to find a procedural flaw, and I'm not seeing it, and I'm asking you to point it out to me. Your arguments seem to go to the substance. You think it's a substantively unreasonable sentence. But where's the procedural flaw? We do say it's substantively unreasonable, Your Honor. But on the procedural point, we'd say first that the district court never addressed the government's argument that the issue of general deterrence was significant in this case. And the other thing it did... You would like him to have added two sentences about general deterrence, which would not have made a bit of difference in his ultimate decision. Your Honor, I think the point would be that the court would at least have to address that issue, would at least have to explain why, when it's raised by the government, why the would address that issue, would assure the public that in a variance of this magnitude, the issue of how would people look at this sentence, how would that be perceived by the public was on its mind, and it would be explaining why the facts here met that issue. And the other thing, Your Honor, is with respect to procedure is something that's raised in Gall, which is that it says that not only must a court calculate the sentencing guideline range, but it must remain cognizant of the extent of the variance throughout the sentencing process, and it must make particular point to note in a case where there is a major variance that there is one here, and then go to some pains at least to explain why. Don't you also raise, isn't there also the question here, I thought you raised the question of whether or not there were factual findings which were clearly erroneous. That's correct, Your Honor. Aren't those procedural aspects? They are. Clearly erroneous findings. Which ones do you think are clearly erroneous, which would constitute procedural here? Your Honor, the first of the two being that the court found that the defendant had accepted responsibility through his conduct in sentencing, and the government's point there is, that was, we claim, a clearly erroneous fact. It's also, by the way, a fact the court took into account in itself. You said that the court was erroneous, clearly erroneous, in finding that the defendant was remorseful. Yes, Your Honor, in the sense that the court said, he listened to what the defendant said at sentencing and made a finding that the defendant had accepted responsibility, he was remorseful. Our point there is, the defendant in his colloquy, again, a defendant who, throughout the proceedings in this case, vigorously protested his innocence through trial, and in fact, claimed that other people did this, two other people throughout the proceedings. At sentencing, he said, I never intended to defraud the Air Force in this case. And then he went on to make additional statements, which he never wants. You know, when I looked at his elocution, I wasn't particularly impressed with some of the wording of what he said. But yet, I recognize that isn't the district court in the best position to evaluate the way in which he presented himself, the way in which he handled those words, analyze the specifics of it, and make a determination of whether or not, at that stage, not at the time when he defended himself, which he had a right to do, but at that stage, he was showing remorse. Your Honor, there's no question that the case law says that the district court is in the best position to do that. But I think I'd say two things there with respect to this issue of acceptance and remorse. One is that, of course, in reviewing cases, this court has to look at the record, and the court has to perform this review. And so we do need to look at the words here, what was said. And of course, although the district court does see what's happening in the courtroom, in the end, what's said, what's in that record, is ultimately what controls. And the basic point here being that if the defendant doesn't admit to having the intent required for the crime, then really under any factual conclusion that the defendant accepted responsibility in any meaningful way would be incorrect. The district court, didn't he seem to, I mean, he seemed to say that that is, he seemed to take that as not saying there was no intent to commit the crime. I mean, I'm having to read between the lines a little bit here. But when I read what Judge Sleet had to say, it sounds like Chief Judge Sleet was accepting that as the defendant attempting to say he didn't go into it with malice of forethought. He didn't enter into a scheme thinking, I'm going to rip off the government, whatever it turned into, but not taking it in the way you intend to take it. Are you saying there's only one way to read this in context? Well, I think, Your Honor, to your point, which is perhaps what the court was saying is that maybe the defendant didn't go into this with that intent, but then down the line, maybe at some point in making some of these additional fraudulent statements in the future, maybe he obtained that intent. I think the point here would be the crime charge, the wire fraud crimes in this case, were, did the defendant, in January of 2001, the time periods where he sent these invoices, did he have the intent to defraud then? In fact, Ms. Jennings, in her closing argument at trial, pointed out that that was the issue in this case, that the issue went to did the defendant have the intent at the time the fraud was charged? So even if what the district court was saying is, well, maybe he didn't have the intent right away, maybe he got it later, and I understand he's accepting and being remorseful at that point. Again, that would be contrary to what really the jury found here. You also argued that the court was clearly erroneous in finding that this was an isolated mistake. Yes. And I think the point there being, Your Honor, that, again, any conception of that term, isolated mistake, does not clearly amount to what the facts are of this crime here, which is that- There's no indication he ever tried to do this before. No indication that we have, Your Honor. Correct. The point being that this was a period of over two years of deception to multiple people in various ways, including false documents and false statements, and that a factual finding that what we had here in this case was an isolated mistake, again, by the way, that's a point that the defense made in their closing argument to the jury. More than once, almost five different times, they said what the defendant did here was just a mistake. And, of course, the jury didn't see it that way, came back with a guilty verdict. But, Your Honors, the other points I'd like to make is, aside from stating that these are procedural errors, clearly erroneous facts, these were also two things that the district court really took into account in formulating its sentence. And the point there would be, for example, with respect to acceptance of responsibility, the guidelines say that even if a defendant goes to trial and protests his innocence, of course, the defendant in just about every single case would never get a reduction in his sentence under the guidelines for accepting responsibility. And he did not. And he did not. I think part of the confusion here is using terms like acceptance of responsibility sounds like the guideline acceptance rather than remorse under 3553. And isolated mistake sounds like aberrant behavior under the guidelines versus the 3553 factor. And, indeed, Your Honor, the point there, too, being that the idea that this is an isolated mistake, the district court found that there was an enhancement here under the guidelines for a plan that had additional levels of sophistication in it. And so, but granted, let's say, for example, we're saying, well, maybe there's some other kind of remorse other than the kind that we're talking about when we talk about that two-level departure under the guidelines. The point then would be, what could that be worth at sentencing? This is an incredibly rare case. In fact, in our district, we can't think of a case in recent years where a defendant went to trial, vigorously protested his innocence, pointed the finger at other people, and then was sentenced to a term of no days incarceration, no fine, no criminal forfeiture. And as of the day of sentencing, restitution had been paid to the government, but by somebody else. So when the defendant walked out of the courtroom that day, he had paid no money out of his own pocket for this crime other than the $200 special assessment. He faced no jail time. $250,000 fine? He paid a, he paid no fine in this case, Your Honor. There had been restitution paid prior to the sentencing in the amount of the fraud, a little over $150,000. That was paid by Mr. Bin Hawail, who at various times, in this case, the defendant claimed was the perpetrator, and then at other times claimed had nothing to do with it. I was mixing other cases. Sorry. Thank you, Your Honor. Yes, so no fine here at all. And so the point would then be, this is a remarkably favorable, on the substantive issue, Your Honor, because, again, I would say that's also one of our major points here. And we know, Your Honors, that the court doesn't often find substantive violations, but this is an unusual case for these reasons. And so the issue is, is this a really significant variance? Is it the kind of major variance that the court talked about in Gall? Absolutely. In Kenansha, the same kind of variance was found by this court to be remarkably favorable. And so the issue is, knowing that, knowing that a more compelling justification, even under Gall, is going to be required here, what was the justification? And respectfully, Your Honors, we'd say when you look at the justification, which we have to do, and we'd acknowledge what this court has to do is look at the reasons that were stated, and we'd acknowledge that, you know, as you go through those, the defense will no doubt say, well, you have to kind of add them up as a total. You can't just look at one. But initially, you've got to look at them all. And the justification stated here, this court has said, other courts have said, they just aren't significant. When you look at the guidelines, the issues of being a family man, being a churchgoer, having support in community, all those issues under the guidelines are things that certainly wouldn't have warranted a departure, wouldn't have come anywhere close. And then in the variance context, we acknowledge, again, that there's, the court, there's, reasonableness is a range. So when you add them up, there must have been some range here where the district court could have gone to, we'd acknowledge. But this is the absolute bottom, the bottom of any range here. And the point would be that in that number of reasonableness, this sentence, this remarkable sentence is, is so unusual and so divorced from the kind of reasoning that the court has to give under 3553A, that this is that case where it's substantively unreasonable. The other point, Your Honors, I'd make is I know the court may be, may be asking the question, how do we come up with a standard with respect to substantive reasonableness which we can work with, which is identifiable for district courts? Because again, sentencing is difficult. I think the court has suggested it in some cases, a standard where the, the, this appellate court would say, is the reasoning provided by the district court illogical and inconsistent with the 3553A factors? In other courts, there have been some cases since, since Gall, not many, but, but some, where courts have said, no, this sentence was substantively unreasonable. And why did those courts say it? Well, the 11th Circuit in a case called United States versus Pew, I'll note, Your Honors, this was not in our, in our additional letter, but I'd give the court the citation, 515F3-1179. There the court found a sentence substantively unreasonable in a child pornography case, a case much like Gall's case in this circuit, where the district court, although the government presented a number of reasons under 3553A why a guideline sentence was appropriate, the district court, it's, it found, focused only on really one factor, the history and characteristics of the defendant, to the exclusion of pretty much everything else. Again, that's what happened here, we'd say. Other cases, courts have found, like, for example, the Omole case in the 7th Circuit, that a, that a decision was substantively unreasonable, where a district court relied in, in significant part, in, in varying significantly, on factors that were not unique, not unusual. Again, Gall says you don't have to have extraordinary factors for any variance. But what's also clear under Gall is that because the court has to take into account disparities in sentencing, if you've got a really significant variance, then you do have to give a compelling justification, more so than in a slight variance. Isn't this case somewhat different, though, the very issues that you raised as procedural error? The isolated mistake and the level of remorse the district court finds, doesn't that distinguish this case from the Omole case? Well, Your Honor, I'd say, I'd say two things about that. One is, I, I acknowledge in Omole, there, there was two things going on there, or Omole, or Omole. However, it's time. Two things going on there in Judge Keeney's opinion. One is, he was saying, when the district court had sentencing, said a lot of negative things about this defendant, and ultimately gave the defendant a really big break. And that was kind of internally inconsistent. I'd say there's some inconsistency in our case, in the sense the district court found this was an extraordinarily serious crime, but then really didn't talk about or do much to acknowledge the seriousness in its sentence. But the other point of Omole, I think, is that the court did say, you know, two, the court seemed to rely to the extent it did have favorable factors, like, for example, the defendant's age. I mean, that's not a, that's something that we see a lot of defendants like that. And so, if that's the thing that we have to look to, to find that this big sentence. But Omole didn't have military service. How? Had military service. Your Honor. A lengthy period of military service, 20 years. Correct. Although, Your Honor, in this case, I'd say, and this is something I would, I would push to the court, the court, the district court did find the defendant's 20 years of military service to the Air Force was a factor here that it really considered. And this, I think, is particularly, would be particularly galling, not only to the government, but to the victim in this case, the United States Air Force. Because, in effect, what happened to the Air Force is, they found out about this fraud against them. They spent years trying to figure out what happened, found it was the defendant. They had their investigators look into it. Then the defendant is convicted at trial of defrauding them over that long period of time, and they're told later, actually, the defendant got no jail time for this, and no fine. And why? Because a significant reason was the defendant worked for you for many years. And the district court found at sentencing that that's how the defendant in this case was able to commit the fraud, because of his time at the Air Force. So that factor really should not be. There's no, there's no suggestion in this record, is there, that the, the crimes were committed while he was a, a, a serviceman, right? No, Your Honor. But it happened after he left. Right. After. So, what you're saying is, it galls them that one of their own turned against them, but, but that, are you saying that the district court couldn't legitimately say 20 years of service that nobody has said was anything less than honorable, and he got an honorable discharge, that that's a, an important factor that weighs in the defendant's benefit?  I, oh, I'd say here, Your Honor, I, I'd acknowledge that the fact of the defense military service is certainly something the district court can consider. But then this court has to look at, it has to substantively look at, okay, but is there any, what about this case, and, and these facts relate to that? And here the district court at sentencing specifically found that it was the defendant's experience at the Air Force, the time he was there, he learned about the contracting process and what you have to do to be able to make a claim for this kind of technology. And he knew that if he sent a false bill of lading up to Maine, where, where they process payments, he could get paid as long as that bill of lading looked legitimate. So here it's more, there's no question, Your Honor, the defendant's a veteran, the court can take it into account. But when looking at to what end, here the court specifically found that his status as a veteran, that time he spent, really significantly helped him commit this fraud. And the point of the government would be, in the end, that factor, it can't be worth much, if anything. All right, Mr. Burke, we'll have you back on rebuttal.  Thank you, Your Honor. Ms. Jennings-Hostetter? May it please the Court, good morning. I represent the appellee, Malcolm Howe. And would like to begin by saying a fact that I think is, is obvious to all of you, certainly, and that is that the most difficult job and weighty responsibility of a trial judge is to pronounce sentence. And in our system of jurisprudence, we are investing in that trial judge the awesome responsibility to determine another human being's life. In light of our U.S. Supreme Court decisions, most recently Rita, Gall, Kimbrough, and before that Booker, the Supreme Court has made it abundantly clear that that trial judge, who is in the best position of anyone to judge that man and that man's life, should be given wide berth and great discretion to do so. In sum, Your Honors, that is what Chief Judge Sleek did with respect to Malcolm Howe. He was in the best position. He was present throughout the trial. He heard all of the evidence. He committed no procedural error and no substantive error in sentencing this man. Why don't you address, then, if you would, the procedural errors that the government has alleged, their assertion about clearly erroneous fact finding? Begin that analysis, Your Honor, with the phrase, clearly erroneous, because this court would have to hold that his factual findings were just that, clearly erroneous. If I could take them in order, the first would be the government's assertion that Mr. Howe did not adequately express remorse. That is an assertion that is belied by, first of all, the written record. This statement that I had no intent to steal is taken completely out of context, because what Malcolm Howe said, if you read the entire allocution, is that when he left military service and went into business, he did so with the thought that he would continue to serve the country by providing for his family, and he had no intent to steal. I think that's clear in the record, and to take it out of context really is unfair. Judge Sleet saw it in context, and Judge Sleet tellingly listened to the government's argument that the remorse was not sincere, and responded with, in my nine years of being a district court judge, I have heard equivocation, I do not hear it today. So the judge was well within his discretion to find remorse. It is not a clearly erroneous finding, far from it. Secondly, with respect to calling this an isolated mistake, the judge recognized, after having heard all of the evidence, that this was an extraordinarily serious crime, in the course, and it was also a crime that involved, to a certain extent, Mr. Howe's knowledge, his specialized knowledge, that he had gained in service, and that was used to commit the crime. That was recognized, but in so recognizing it, the judge also realized what the record makes abundantly clear, was that this was an aberration for Mr. Howe. He's not an 18-year-old person who just decides to commit a crime, he's a man who served his country for 20 years, and this is truly an aberration. The judge had the benefit of all of the letters that were submitted, and they're in our supplemental appendix, and really could judge the measure of the man, and in doing so, found that this was an isolated mistake. That's not clearly erroneous. Finally... Yeah, but what about the aspect of this, that over a period of at least two years, he did everything he could to cover up what took place? Can you really call that kind of a scheme an isolated mistake? The scheme took place over a period of time, yes, Your Honor, but it was isolated in the The crime was committed, the jury found that the crime was committed, but in terms of his overall character, in terms of his life, the sum total of this man was greater than what he did in this instance, and it cannot be said without second-guessing the court that that's a clearly erroneous finding. With respect to general deterrence, the Supreme Court in Gaul and this court has made it clear that the court need not address each and every 3553A factor, however, general deterrence was... Unless it's raised by a party. That's correct, Your Honor. Which it was. It was raised by the government, not argued in great detail, but raised by the government, and it was also raised on the opposite side in my letter memorandum that was submitted to the court and is part of this supplemental appendix, and the argument on that side was, yes, there is the concept of general deterrence, but the fact of this man's conviction that he will have to live with for the rest of his life, the fact of the shame in the community and the shame in the military with which he still had very close ties to several people, his requirement of community... But that's conviction. That's a fact-finder determining responsibility. We're at sentencing. It's also... The question then is, what's the appropriate sentence for the act that was committed? But those facts are relevant to general deterrence. If we're looking at the universe... Specific deterrence as to him, general deterrence is a broader concept. Well, I understand that, Your Honor, but I believe that those facts are relevant to general deterrence. If someone in the Air Force is looking to make a crime, to commit a crime when they get out and they become engaged in a private business, they're going to see that Malcolm Howe lives the rest of his life as a convicted felon. He was put on probation, which the U.S. Supreme Court in Gaul pronounced is a punishment. He was forced to do community service. His finances over and above that had to remain open for the probation office. He's not allowed to engage in credit transactions. He was placed on home confinement. These are punishments. And if anyone's looking to come out and commit a crime, it serves as a general deterrence. How do you respond to the government's argument that this is a particularly unjustifiable result when you consider that the man suffered no economic consequence except for a $200 special assessment? Your Honor, the government perhaps neglected to mention that in their opening brief, they mentioned that the criminal forfeiture, the judgment was entered in error, frankly, and the criminal forfeiture had not been addressed. But it was later resolved in the Civil False Claims Act with a monetary assessment as part of an overall settlement agreement. So this individual, Mr. Howe, did end up paying something? Because the government says that what was paid was paid by a third party. Mr. Howe was an out-of-pocket penny. Is that factually erroneous? Your Honor, in terms of the restitution, that is absolutely correct. I do not know whether he paid all of the civil assessment or whether Mr. Ben Howe, who frankly was the owner of the business in all real respects, whether he paid part of that or not, I don't know, with respect to the Civil False Claims payment and the criminal forfeiture payment. But Mr. Howe is not the kind of individual this Court considered in Tomko. So when we look to the monetary part of this, he's not a rich, white-collar defendant who was expected to do the good acts, who was expected to have the money, who was expected to be a community leader. This is a man who, on his own, he took a salary out of the business. At the same time, couldn't you argue, and part of what the government argues, is that he was a person who had some inside expertise. He knew apparently how you could send a bill and an invoice without sending or even purchasing the equipment that you were, the encryption equipment that you were getting paid for and not have anybody discover it. And isn't the general deterrence concept applicable to that class of person with inside knowledge, potentially submitting false bills, getting paid improperly, whether it be by the government or by a private entity? Your Honor, and the trial court recognized the serious nature of this offense and what he had done. The trial court did, Your Honor. The trial court didn't specifically say general deterrence, but recognized that he used his specialized skill, yes. And the question is, with respect to substantive reasonableness. We're at procedural reasonableness. We're still on procedural reasonableness. Shouldn't the court have said something about general deterrence when it was raised by the government? That's the question. That's the question, and the court did not specifically address it, except to say prior to listing the reasons why the court was imposing a sentence of probation, the court said, I have taken into consideration the three 553A factors, including deterrence, and listed a number of other factors. And you think that's enough? Well, Your Honor, short of imposing a script on the judge, the matter was clearly argued. It was argued by the defense, and it was argued by the government. And the court indicated that it had considered it. So the question is, did it consider it? And I think we have to take the trial court at its word that it had considered that factor. All right, moving to the substantive reasonableness of the sentence. What was it that's so unique and atypical with Mr. Howe that distinguishes him from a person like Mr. O.M., Omily or Omoli, however his name is pronounced? Your Honor, a great deal. First of all, this man did have a distinguished military career, not a few years, but 20 years. He received an honorable discharge at the rank of Master Sergeant. He had commendations that were presented to the court. He not only was a well-respected member of his community, but this is a guy who rolled up his sleeves and got involved, not just throwing money at something, and that's not what he did. He would actually go coach soccer. He would actually go to charity events. He would work at his church events. He went over and above in terms of his own family. The court found that his contributions were extraordinary, were over and above the norm that we expect of a father taking care of his children or spouse. What he did was truly extraordinary. He took in his extended family whenever they were in a time of need, both to help with the nephew's education, to help them when they were studying for an entrance exam to the military, to further their military career, to help study for tests. He helped fund a house for his father and his aging father near him. These are, and I could go on and on, I won't, but these are extraordinary events. They're not ordinary in any sense of the word. He was not just a respected member of his community. He was a leader in the community because he rolled his sleeves up and he actually did things. He closed his business, he got out of that business, and he moved on, and the court found that to be significant as well. The service that you've described, this was not simply post-conviction pre-sentence service, right? Absolutely, Your Honor. The letters attest to the fact that he has done this since people could remember. He was originally from Trinidad. A lot of his family was still in Trinidad as they came over. He helped them. He gave them a place to live. These are things he's done throughout his service. There were letters from individuals in the military who say that because of Malcolm Howe, I am the man I am today in the military. What do we do with the point raised by Mr. Burke? He said perhaps the court is struggling with the question of what standard you apply when you're asking the question of substantive reasonableness. What's your answer to that question? At what point would we say, yeah, there's a range, but that's outside the range? How would we measure that? That's a very good question, Your Honor, because the Gall Court instructs us in many respects to give a district court judge wide latitude, instructs the court to look at the totality of the circumstances, and this court in Cooper perhaps put it best. They still left us with this issue of gauging what's substantively reasonable. With all due respect, I think there will be very few reversals after Gall, because as long as the district court engaged in a process that is logical and as long as the reasoning process was sound, the court in Gall indicated that there would be a broad range of reasonable sentences. In Gall itself, the minimum guideline range was 30 months. He got probation. The government in this case only asked for the minimum of the guidelines and acknowledged during the sentencing colloquy that it was likely that it was going to be less. So the range of reasonableness in this case is probation. But again, the court cannot second-guess what the judge did. This court simply must look at what the judge did and say, was it logical? Did the judge use sound reasoning? And not can we second-guess where that judge should have been. Thank you. Thank you. Mr. Burke. Thank you, Your Honors. I've reserved just three minutes of time, and I'll be brief, just to briefly address some of the points that Ms. Jennings made. The court asked, and Ms. Jennings talked about the issue again that we mentioned earlier, is the district court required to follow a script to list every 3553A factor? The government is not saying that, and that's not the law. Here, of course, the government raised issues about 3553A that really weren't addressed in the ultimate sentence. The district court also really did not address, as Gall asked it to. Just the general deterrence issue, I thought. Correct, Your Honor. And also the district court didn't really address, other than calculating the guideline range, the extent of its variance, why that variance was justified here, because it was a significant one. But moreover, I think the point. Are you saying that the court had to say, I know this is a big variance, and I think it's justified because, and then if it had said that and said all the other things that it said, it would have been okay? Your Honor, I'm not suggesting there's any magic words, but I think that what Gall must mean is that in some way, the court must acknowledge what you said. Not that there's any particular talismanic way, but to acknowledge, I understand this is the guideline range, and let me just say, for the record and for the public, this is a very serious departure. In fact, it's very unusual because the defendant actually went to trial in this case and was convicted by a jury. But let me explain why, although the guidelines say, with the considered wisdom that they have, this range should be up here. Let me explain more why that range, although in the mine run of cases, is going to apply. Let me talk more about why the guidelines and what they're getting at just really don't amount to what happened here. Some more addressing the fact that not only the guideline range itself, but as we point out in our briefs, the commentary to the guidelines that talks about, in fraud cases, the idea that some term of imprisonment was focused on by the guidelines drafters because of the way that it was handled prior to it, that the courts got engaged in that issue much more than it did here because it really didn't engage it at all. And the other point would be – Is there any chance that Chief Judge Sleet did not know what the extent of the departure was? Well, Your Honor, I certainly acknowledge that he knew what the extent of the departure was. He knew what the range was. But it's got to be more what I think Gall requires. It's got to be something other than just all the reasons he listed. Because it's not just for the judge, and it's not even just for the parties. It's for the public, too. I mean, that kind of goes to the issue of deterrence. But it is – you know, I think it's the general background principle that when people would see what happened here, they'd say, well, that's serious. That's significant. This person went to trial and was convicted. And they're going to expect – I think just a lay person who wouldn't even know what the sentencing guidelines were would say, wow, this person must be facing some serious amount of incarceration for this. And when they hear about it in the public, they're going to say, what happened? Why? And I think that's the point that what Gall is getting at, which is – He gave a litany of reasons why. He didn't say, therefore, that justifies a departure from 15 down to 7 or 8 or wherever it was. But – and the point being really didn't engage the premise of the guidelines, which is why is that range there and why are we going down? How do those two relate? And the other point I'd say, Your Honors, with respect to – I think Ms. Jennings raised the issue of community service to the public. I'd say no doubt there were letters sent, a number of them, which I think the defense summed up by saying the defendant was a good person. He was a good family man and a good person. But I'd say here that not only have the guidelines said that being a good person, particularly in a white-collar case, is not particularly unique or unusual to defendants, but also that Congress has said in Section 994 that community service like this is not ordinarily relevant. Again, the court can take it into account. But in terms of is it enough to justify this significant variance? Evidently, the trial judge, looking at the specific facts, thought it was. Why would we be in a better spot than he to look at those specific facts and think differently? Because I think that the court, as part of substantive reasonableness review, has to look more into what's there. It can't just be that the court reviewed certain documents and then concluded this justifies an 18- to 24-month variance in a case where the defendant went to trial. But it's what was there. In the end, it is looking at each piece, but the court has to do that. Is there something here in any of these pieces that makes the court, in reviewing it, say, wow, I can understand why that might get a lot of the way there to go all the way down to zero months of incarceration. The point would be that there isn't here, even when you add up everything, to get down to this very bottom of the depth of the guideline range. And that, Your Honor, the fact of that unusual case, this case here, in a case, again, where the defendant protested his innocence and pointed the finger at others, really shows why this sentence is substantively unreasonable and is that case that the court should reverse. Mr. Burke, thank you very much. We thank both counsel for excellent arguments, and we will take this matter under advisement.